Ana C. Vásquez (231903)
MEISTER SEELIG & FEIN LLP
1250 Sixth Street, Suite 403
Santa Monica, CA 90401
Phone: (310) 295-2167
acv@msf-law.com

Alexander Malbin (*pro hac vice*)
MEISTER SEELIG & FEIN PLLC
125 Park Avenue, 7th Floor
New York, NY 10017
Phone: (212) 655-3540
arm@msf-law.com

*Counsel for Plaintiff,*
*The Arena Group Holdings, Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ARENA GROUP HOLDINGS, INC.,<br><br>Plaintiff,<br>- against -<br><br>BACKGRID USA, INC.,<br>and BANJO MCLACHLAN,<br><br>Defendants. | Case No. 2:24-cv-03874-GW-RAO<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF COPYRIGHT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, The Arena Group Holdings, Inc. ("Arena" or "Plaintiff"), by and through its undersigned attorneys, hereby prays to this honorable Court for relief against Defendants, BackGrid USA, Inc. ("BackGrid") and Banjo McLachlan ("McLachlan") (collectively, "Defendants"), based on the following:

1          FIRST AMENDED COMPLAINT

**INTRODUCTION**

1.       This is an action for a declaratory judgment of non-infringement of copyright, arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the U.S. Copyright Act, 17 U.S.C. § 101 *et seq*.

2.       Arena brings this action against BackGrid, a celebrity photograph and video agency, and McLachlan, a celebrity photographer and videographer and, upon information and belief, licensor of celebrity photographs and videos to BackGrid, seeking a judicial declaration of non-infringement with respect to claims of copyright infringement and unlicensed use of copyrighted works implicating protectable rights that BackGrid and McLachlan have alleged against Arena arising from alleged use of thirty-one photographs in which BackGrid claims copyright ownership (the "BackGrid Photographs At Issue", as further defined *infra*) and five photographs and one video in which McLachlan claims copyright ownership (the "McLachlan Works At Issue", as further defined *infra*).

**JURISDICTION AND VENUE**

3.       This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338 (a) and (b).

4.       This Court has personal jurisdiction over BackGrid because BackGrid is located and has its principal place of business in the State of California and this District.

FIRST AMENDED COMPLAINT

5. This Court has personal jurisdiction over McLachlan because McLachlan has engaged in continuous and systematic business activities directed at the State of California and this District by way of, *inter alia*, McLachlan's licensing relationship with BackGrid described herein, including specifically, without limitation, McLachlan's licensing of photographs and/or videos (including some or all of the McLachlan Works At Issue [as defined *infra*]) to BackGrid, a photography agency located in the State of California and this District, for further sub-licensing and/or publication by BackGrid in the State of California and this District (from which some or all of the McLachlan Alleged Unlicensed Uses [as defined *infra*] at issue in this action arose).

6. Venue in this District is proper under 28 U.S.C §§ 1391 and 1400(a).

## **PARTIES**

7. Plaintiff Arena is a Delaware corporation with a principal place of business of 200 Vesey Street, 24th Floor, New York, New York, 10281.

8. Upon information and belief, Defendant BackGrid is a California corporation with a principal place of business at 700 North Pacific Coast Highway, Suite 200, Redondo Beach, California, 90277.

9. Upon information and belief, Defendant McLachlan is a resident of the State of New York with an address of 44 Carmine Street, Apartment 1, New York, New York, 10014.

FIRST AMENDED COMPLAINT

## FACTS COMMON TO ALL COUNTS

I.     **The Parties And Their Businesses**

A.     **Plaintiff Arena**

10.     Arena's business involves, *inter alia*, the ownership and operation of an online technology platform for the hosting of websites.

11.     Arena owns and operates a number of websites hosted on its platform, including the website for Men's Journal Magazine, www.mensjournal.com (the "Men's Journal Website"), the website for online sports publication The Spun, www.thespun.com (the "The Spun Website"), and the website for Surfer Magazine, www.surfer.com (the "Surfer Website").

12.     Arena employs and engages contributors to publish certain content on these websites it owns and operates, while certain content on these websites (including the Men's Journal Website and The Spun Website) is published by users of the website, with Arena exercising no control or moderation over any of that content and not receiving any financial benefit directly attributable to any of that content.

13.     Arena's platform also hosts websites operated and published by third parties.

14.     For these third-party-published websites, Arena exercises no control or moderation over any of their content, and does not receive any financial benefit

directly attributable to any of the content published thereon.  Arena merely operates the platform on which these websites are hosted.

15.    Two of these third-party-published websites hosted on Arena's technology platform are the website www.fadeawayworld.net (the "Fadeaway World Website") and the website www.fashionista.com (the "Fashionista Website").

### B.    Defendant BackGrid

16.    According to its website, https://usa.backgrid.com *(accessed May 3, 2024)*, BackGrid is a "global premier celebrity news agency" which "suppli[es] the world's top news outlets with real-time content from the world's top photographers".

17.    Upon information and belief, BackGrid's business involves securing copyright rights to celebrity photographs from photographers, and licensing usage rights for those photographs to various media outlets.

18.    Upon information and belief, BackGrid's business also involves substantial enforcement of the photographic copyrights it secures.

19.    Upon information and belief, and according to federal court records accessible on the federal government's Public Access to Court Electronic Records website (https://pacer.uscourts.gov) ("PACER"), BackGrid has filed no fewer than eighty civil actions alleging infringement of photographic copyrights from 2018 to the present.

FIRST AMENDED COMPLAINT

20.     In addition, BackGrid engages a third-party agency, non-party Okularity Inc. ("Okularity"), for the specific purpose of tracking unauthorized use of its photographs on the internet and social media.

21.     Okularity's website, https://www.okularity.com *(accessed May 3, 2024)*, touts that it "excels in tracking media across the vast expanse of the Internet, including the dynamic world of social media", "scours the Internet, social media, and print publications for your photography", "keep[s] tabs on thousands of new images every day", and "survey[s] hundreds of news outlets, social media, and web sites".

22.     Thus in short, upon information and belief, BackGrid is a highly sophisticated photographic copyright owner and a seasoned, prolific copyright litigator.

**C.     Defendant McLachlan And His Licensing Relationship With Defendant BackGrid**

23.     Upon information and belief, McLachlan is a professional photographer whose business includes creating and licensing photographs and videos of celebrities.

24.     Upon information and belief, McLachlan engages with photography agencies in the United States, including in the State of California and this District, to which he licenses and grants rights in and to photographs and videos created by him and in which he claims copyright rights.

FIRST AMENDED COMPLAINT

25.    Upon information and belief, McLachlan has a licensing relationship with BackGrid, a photography agency located in the State of California and this District, whereby McLachlan grants licenses for photographs and videos to BackGrid, under which McLachlan authorizes BackGrid to engage in further sub-licensing and/or publication of such photographs and videos, including in the State of California and this District.

26.    Upon information and belief, BackGrid has sub-licensed and/or published photographs and videos in the State of California and this District pursuant to licenses for such photographs and videos granted to BackGrid by McLachlan.

27.    Upon information and belief, McLachlan has granted licenses for one or more of the McLachlan Works At Issue (as further defined *infra*) to BackGrid, either on an exclusive or non-exclusive basis, authorizing BackGrid to engage in sub-licensing and/or publication of such photographs and videos in the State of California and this District.

28.    Upon information and belief, subsequent to McLachlan's granting of licenses to BackGrid for one or more of the McLachlan Works At Issue, BackGrid engaged in sub-licensing and/or publication of one or more of the McLachlan Works At Issue in accordance with such licenses in the State of California and this District.

7                FIRST AMENDED COMPLAINT

**II.     BackGrid's Assertion of Copyright Infringement Claims Against Arena**

29.     On December 11, 2023, Okularity sent a letter to Arena on behalf of and as the authorized agent of BackGrid, in which it alleged unauthorized use by Arena of twenty-three photographs owned by BackGrid on certain websites and social media pages in violation of BackGrid's copyright rights (the "Initial Demand Letter").  A copy of the Initial Demand Letter is attached hereto at **Exhibit A**.[1]

30.     Through the Initial Demand Letter (and further clarified and detailed by Okularity though subsequent communications to Arena's legal counsel), BackGrid asserted that BackGrid owns copyright rights, and that Arena infringed BackGrid's copyright rights, in and to twenty-three photographs, including one photograph of Rihanna (the "Rihanna Photograph"), one photograph of Devin Booker and Kendall Jenner (the "Booker/Jenner Photograph"), seven photographs of Brie Larson (the "Larson Photographs"), eleven photographs of cast members of the film franchise "The Avengers" (the "Avengers Photographs"), and three photographs of Sebastian Stan (the "Stan Photographs").

31.     In subsequent emails to Arena's counsel on April 17, 2024, and April 25, 2024, Okularity, on behalf of BackGrid, alleged that BackGrid also owns copyright rights, and that Arena also infringed BackGrid's copyright rights, in and

---

[1] In the Initial Demand Letter, Okularity also alleged infringement claims against Arena on behalf of another photo agency, Xposure Photo Agency, Inc., with respect to two photographs of Luca Doncic and one photograph of Kourtney Kardashian & Travis Barker.  That company is not a party to this action, and its alleged infringement claims against Arena with respect to those photographs are not at issue in this Complaint against BackGrid.

FIRST AMENDED COMPLAINT

to seven photographs of Taylor Swift and Travis Kelce (the "Swift/Kelce Photographs") and one photograph of Sydney Sweeney (the "Sweeney Photograph") by unauthorized use of the photographs on certain websites and social media pages (the "Subsequent Demand Emails").  Copies of the Subsequent Demand Emails is attached hereto at **Exhibit B**.

32.     The thirty-one photographs identified in ¶¶ 22-23 *supra*, with respect to which BackGrid claimed copyright-ownership and alleged copyright infringement by Arena in the Initial Demand Letter and Subsequent Demand Emails, are collectively referred to herein as the "BackGrid Photographs At Issue".

33.     As of the date of filing of this Complaint, BackGrid has not withdrawn any of its allegations of copyright infringement against Arena with respect to any of the BackGrid Photographs At Issue.

**III.   BackGrid's Copyright Infringement Claims Against Arena Are Legally Without Merit**

34.     As set forth in greater detail below, BackGrid's claims of alleged copyright infringement against Arena with respect to each and every one of the BackGrid Photographs At Issue are meritless and fail as a matter of law on one or more legal basis.  Accordingly, by this declaratory judgment action, Arena seeks a

declaration of non-infringement of any of BackGrid's copyright rights in and to any of the BackGrid Photographs At Issue.[2]

    **A.**    **BackGrid's Copyright Claims Against Arena As To The Stan Photographs And The Sweeney Photograph Fail As A Matter of Law For Lack Of Use By Arena In Violation of a Copyright Owner's Exclusive Rights, And As Barred By The DMCA**

35.    As set forth in the Initial Demand Letter, BackGrid has alleged that Arena infringed its copyright rights in the Stan Photographs by unauthorized use on the Men's Journal Website, on the following web page: https://www.mensjournal.com/streaming/fans-react-to-first-look-at-sebastian-stan-as-donald-trump (the "Stan Alleged Infringements").

36.    As set forth in the Subsequent Demand Emails, BackGrid has alleged that Arena infringed its copyright rights in the Sweeney Photograph by unauthorized use on the Men's Journal Website, on the following web page: https://www.mensjournal.com/sneakers/sydney-sweeney-casually-rocks-new-balance-9060s-in-lax (the "Sweeney Alleged Infringement").

37.    A screen capture of the Stan Alleged Infringements is attached hereto at **Exhibit C**.

38.    A screen capture of the Sweeney Alleged Infringement is attached hereto at **Exhibit D**.

---

[2] Arena's defenses to BackGrid's copyright infringement allegations set forth in this First Amended Complaint are asserted without waiver of or prejudice to Arena's right to assert additional and/or alternative defenses should grounds for any such further defenses be discovered during the course of this litigation.

39.    As reflected in these screen captures attached hereto at Exhibits C and D, the Stan Photographs and the Sweeney Photograph only appeared on the Men's Journal Website by way of embeds of third-party social media posts of those photographs.

40.    The Stan Photographs and the Sweeney Photograph are not and have never been posted directly (i.e. other than as embeds of third-party social media posts) on the web pages identified above, any other page on the Men's Journal Website, or any other web site owned, operated or controlled by Arena, or stored on any server owned, operated, or controlled by Arena.

41.    The Stan Alleged Infringements and the Sweeney Alleged Infringement, embeds of third-party social media posts of the Stan Photographs and the Sweeney Photograph on the Men's Journal Website (where the Stan Photographs and the Sweeney Photograph are not stored on any server under Arena's ownership), are not copyright-infringing displays or uses of the Stan Photographs or the Sweeney Photograph in violation of a copyright owner's exclusive rights as a matter of law. *See Hunley v. Instagram, LLC*, 73 F.4th 1060, 1065 (9th Cir. 2023), *citing Perfect 10 v. Amazon, Inc.*, 508 F.3d 1146 (9th Cir. 2007).

42.    Therefore, because the Stan Alleged Infringements and Sweeney Alleged Infringement are embeds of third-party social media posts, and Arena has not engaged in (and BackGrid has not alleged) any other use of the Stan

11                          FIRST AMENDED COMPLAINT

Photographs or the Sweeney Photograph implicating a copyright owner's exclusive rights, Arena has not infringed any of BackGrid's exclusive copyright rights in and to the Stan Photographs or the Sweeney Photograph as a matter of law.

43.     Furthermore, as an additional and alternative defense to BackGrid's claims against Arena as to the Stan Alleged Infringements and the Sweeney Alleged Infringement, these claims are barred by the safe harbor provisions of the Digital Millennium Copyright Act, 17 U.S.C § 512(c) *et seq.* (the "DMCA").

44.     The Stan Alleged Infringements and the Sweeney Alleged Infringement were carried out as a result of acts taken by and at the direction of a user of Arena's platform, namely, one or more third-party publishers of content on the Men's Journal Website.

45.     Arena did not participate in, approve, moderate, select, or direct the Stan Alleged Infringements or the Sweeney Alleged Infringement, or any other use of the Stan Photographs or the Sweeney Photograph.

46.     Accordingly, if the Stan Alleged Infringements and/or the Sweeney Alleged Infringement are deemed to infringe BackGrid's copyright rights, such infringements are by reason of storage of the Stan Photographs and the Sweeney Photograph on the Men's Journal Website, a platform controlled and/or operated by a service provider, Arena, at the direction of one or more users of Arena's platform, and therefore are subject to the DMCA's safe harbor provisions.

47.     BackGrid has never served Arena with a Notice of Claimed Infringement in accordance with 17 U.S.C § 512(c)(3) with respect to the Stan Alleged Infringements or the Sweeney Alleged Infringement.

48.     Arena has not received any financial benefit directly attributable to the Stan Alleged Infringements or the Sweeney Alleged Infringement.

49.     Therefore, Arena is insulated from copyright infringement liability to BackGrid for the Stan Alleged Infringements and the Sweeney Alleged Infringement as a matter of law pursuant to the DMCA's safe harbor provisions.

**B.     BackGrid's Copyright Claims Against Arena As To The Swift/Kelce Photographs Fail As A Matter of Law For Lack of Use By Arena In Violation of Copyright Owner's Exclusive Rights**

50.     As set forth in the Subsequent Demand Emails, BackGrid has alleged that Arena infringed its copyright rights in the Swift/Kelce Photographs by unauthorized use on The Spun Website, on the following web pages: https://thespun.com/nfl/afc-west/kansas-city-chiefs/the-3-best-swimsuit-photos-of-travis-kelce-taylor-swift; https://thespun.com/nfl/afc-west/kansas-city-chiefs/travis-kelce-breaks-silence-on-vacation-with-taylor-swift (the "Swift/Kelce Alleged Infringements").

51.     Screen captures of the Swift/Kelce Alleged Infringements are attached hereto at **Exhibit E**.

52.    As reflected in these screen captures attached hereto at Exhibit E, the Swift/Kelce Photographs only appear on The Spun Website by way of embeds of third-party social media posts of those photographs.

53.    The Swift/Kelce Photographs are not and have never been posted directly (i.e. other than as embed of third-party social media posts) on the web pages identified above, any other page on The Spun Website, or any other website owned, operated or controlled by Arena, or stored on any server owned, operated, or controlled by Arena.

54.    The Swift/Kelce Alleged Infringements, embeds of third-party social media posts of the Swift/Kelce Photographs on The Spun Website (where the Swift/Kelce Photographs are not stored on any server under Arena's ownership), are not copyright-infringing displays or uses of the Swift/Kelce Photographs as a matter of law. *See Hunley, supra, citing Perfect 10 v. Amazon, supra.*

55.    Therefore, because the Swift/Kelce Alleged Infringements are embeds of third-party social media posts, and Arena has not engaged in (and BackGrid has not alleged) any other use of the Swift/Kelce Photographs implicating a copyright owner's exclusive rights, Arena has not infringed any of BackGrid's exclusive copyright rights in and to the Swift/Kelce Photographs as a matter of law.

FIRST AMENDED COMPLAINT

### C. BackGrid's Copyright Claims Against Arena As To The Larson Photographs Fail As A Matter of Law For Lack Of Volitional Conduct By Arena, And Are Time-Barred

56.    As set forth in the Initial Demand Letter, BackGrid has alleged that Arena infringed its copyright rights in the Larson Photographs by unauthorized use on the Men's Journal Website, on the following web page:

https://www.mensjournal.com/health-fitness/photos-first-look-brie-larsons-captain-marvel-costume#gid=ci02b8d15c300c2605&pid=1-brie-larson-as-carol-danvers-in-captain-marvel (the "Larson Alleged Infringements").

57.    The Larson Alleged Infringements were published on the Men's Journal Website – and thus commenced – on May 21, 2018.

58.    On May 21, 2018, Arena did not own, operate, control, or have any association or connection with the Men's Journal Website, including the web page on which the Larson Alleged Infringements occurred.

59.    Arena did not have any involvement with, any control over, or any connection whatsoever to, the Larson Alleged Infringements from their May 21, 2018 commencement until December 13, 2022.

60.    Arena's earliest connection to the Men's Journal Website began on December 13, 2022, the date Arena acquired Men's Journal and took over ownership, operation, and control of the Men's Journal Website.

61.     Thus, Arena's earliest connection to the Men's Journal Website, including the Larson Alleged Infringements thereon, was over three years after the commencement of the Larson Alleged Infringements.

62.     Arena did not engage in any active involvement, selection, or instigation with respect to, or any other action or participation that can be attributed as the direct cause of, the Larson Alleged Infringements.

63.     Instead, beginning on December 13, 2022, Arena merely hosted and stored the Men's Journal Website, including its web page which contained the Larson Alleged Infringements published by a predecessor publisher – which had already been online for over three years.

64.     Arena did not exercise any control over the Larson Alleged Infringements other than the general operation of the Men's Journal Website.

65.     Accordingly, Arena has not engaged in any volitional conduct by which it may be directly liable to BackGrid for the Larson Alleged Infringements as a matter of law. *See VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 731 (9th Cir. 2019), *citing Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017).

66.     Furthermore, as an additional and alternative defense to BackGrid's copyright claims against Arena as to the Larson Alleged Infringements, BackGrid's claims are time-barred by the Copyright Act's statute of limitations and the doctrine of laches.

67.     The U.S. Copyright Act, 17 U.S.C. § 507(b), provides that a copyright infringement claim must be "commenced within three years after the claim accrued".  "[A] copyright infringement claim accrues – and the statute of limitations begins to run – when a party discovers, *or reasonably should have discovered*, the alleged infringement." *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cir. 2019) (emphasis added; internal citations omitted).

68.     The Larson Alleged Infringements commenced, by the publication of the Larson Photographs on the Men's Journal Website, on May 21, 2018.

69.     Since that date, the Larson Alleged Infringements merely remained online on the Men's Journal Website; no new acts implicating a copyright owner's exclusive rights with respect to the Larson Alleged Infringements occurred subsequent to that date that can constitute a separate accrual of claims, as a matter of law. *See, e.g., Bolano v. Grant*, No. 2:22-cv-04531-SVW-KS, 2023 WL 4291980, *2-3 (C.D. Cal. May 16, 2023) (collecting cases).

70.     BackGrid first asserted infringement claims with respect to the Larson Alleged Infringements, by way of the Initial Demand Letter, on December 11, 2023 – nearly five and a half years after the Larson Alleged Infringements commenced.

71.     In light of BackGrid being a highly sophisticated copyright owner and seasoned copyright litigator (*see* ¶¶ 16-20 *supra*), it is not plausible that

17          FIRST AMENDED COMPLAINT

BackGrid, with the exercise of reasonable diligence, could not have discovered the Larson Alleged Infringements within the Copyright Act's three-year statute-of-limitations period, or before May 21, 2021 – notably, over a year and a half before Arena acquired Men's Journal.

72.     To this end, upon information and belief and according to federal court records publicly available on PACER, BackGrid filed thirty-seven lawsuits against third parties between the May 21, 2018 posting date of the Larson Alleged Infringements and three years later on May 21, 2021, as well as an additional thirty-five lawsuits against third parties between May 21, 2021 and December 11, 2023, the date it first asserted infringement claims with respect to the Larson Alleged Infringements by way of the Initial Demand Letter.

73.     In light of its status as a highly sophisticated copyright owned and seasoned, prolific copyright litigator, BackGrid should have discovered and asserted claims with respect to the Larson Alleged Infringements within three years in the exercise of reasonable diligence.

74.     BackGrid cannot establish that it could not have discovered and asserted claims with respect to the Larson Alleged Infringements within three years in the exercise of reasonable diligence.

75.     As a result of BackGrid's unreasonable and inexcusable delay in asserting its rights with respect to the Larson Alleged Infringements for over five years, including for a period of nearly four-and-a-half years between the initial

18                          FIRST AMENDED COMPLAINT

allegedly-infringing publication of the Larson Photographs on the Men's Journal Website on May 21, 2018 and Arena's acquisition of Men's Journal on December 13, 2022, Arena has been substantially prejudiced by now being forced to defend against BackGrid's infringement claims which, had BackGrid acted with reasonable diligence, should have been asserted against the predecessor-owner of Men's Journal before Arena's acquisition of Men's Journal and commencement of operation of the Men's Journal Website.

76.    Accordingly, BackGrid's infringement claims against Arena with respect to the Larson Alleged Infringements are barred by the Copyright Act's statute of limitations and the doctrine of laches as a matter of law.

> ### D.    BackGrid's Copyright Claims Against Arena As To The Avengers Photographs Fail As A Matter of Law For Lack Of Volitional Conduct By Arena, And Are Time-Barred

77.    As set forth in the Initial Demand Letter, BackGrid has alleged that Arena infringed its copyright rights in the Avengers Photographs by unauthorized use on the Men's Journal Website, on the following web page:

https://www.mensjournal.com/entertainment/avengers-4-photos-captain-america-iron-man-and-ant-man-show-surprising-new-looks#gid=ci02b8d60360002605&pid=1-avengers-4-set-photos-bring-the-team-together (the "Avengers Alleged Infringements").

78.    The Avengers Alleged Infringements were published on the Men's Journal Website – and thus commenced – on July 19, 2019.

79.     On July 19, 2019, Arena did not own, operate, control, or have any association or connection with the Men's Journal Website, including the web page on which the Avengers Alleged Infringements occurred.

80.     Arena did not have any involvement with, any control over, or any connection whatsoever to, the Avengers Alleged Infringements from their July 19, 2019 commencement until December 13, 2022.

81.     Arena's earliest connection to the Men's Journal Website began on December 13, 2022, the date Arena acquired Men's Journal and took over ownership, operation, and control of the Men's Journal Website.

82.     Thus, Arena's earliest connection to the Men's Journal Website, including the Avengers Alleged Infringements thereon, was over three years after the commencement of the Avengers Alleged Infringements.

83.     Arena did not engage in any active involvement, selection, or instigation with respect to, or any other action or participation that can be attributed as the direct cause of, the Avengers Alleged Infringements.

84.     Instead, beginning on December 13, 2022, Arena merely hosted and stored the Men's Journal Website, including its web page which contained the Avengers Alleged Infringements published by a predecessor publisher – which had already been online for over three years.

85.     Arena did not exercise any control over the Avengers Alleged Infringements other than the general operation of the Men's Journal Website.

86.     Accordingly, Arena has not engaged in any volitional conduct for which it may be directly liable to BackGrid for the Avengers Alleged Infringements as a matter of law. *See VHT, supra, citing Perfect 10 v. Giganews, supra*.

87.     Furthermore, as an additional and alternative defense to BackGrid's copyright claims against Arena as to the Avengers Alleged Infringements, BackGrid's claims are time-barred by the Copyright Act's statute of limitations and the doctrine of laches.

88.     The U.S. Copyright Act, 17 U.S.C. § 507(b), provides that a copyright infringement claim must be "commenced within three years after the claim accrued".  "[A] copyright infringement claim accrues – and the statute of limitations begins to run – when a party discovers, *or reasonably should have discovered*, the alleged infringement." *Media Rights Techs., supra*.

89.     The Avengers Alleged Infringements commenced, by the publication of the Avengers Photographs on the Men's Journal Website, on July 19, 2019.

90.     Since that date, the Avengers Alleged Infringements merely remained online on the Men's Journal Website; no new acts implicating a copyright owner's exclusive rights with respect to the Avengers Alleged Infringements occurred subsequent to that date that can constitute a separate accrual of claims, as a matter of law. *Bolano, supra*.

91.     BackGrid first asserted infringement claims with respect to the Avengers Alleged Infringements, by way of the Initial Demand Letter, on December 11, 2023 – over four years after the Avengers Alleged Infringements commenced.

92.     In light of BackGrid being a highly sophisticated copyright owner and seasoned copyright litigator (*see* ¶¶ 16-20 *supra*), it is not plausible that BackGrid, with the exercise of reasonable diligence, could not have discovered the Avengers Alleged Infringements within the Copyright Act's three-year statute-of-limitations period, or before July 19, 2022 – notably, nearly five months before Arena acquired Men's Journal.

93.     To this end, upon information and belief and according to federal court records publicly available on PACER, BackGrid filed forty-three lawsuits against third parties between the July 19, 2019 posting date of the Avengers Alleged Infringements and three years later on July 19, 2022, as well as an additional eighteen lawsuits against third parties between July 19, 2022 and December 11, 2023, the date it first asserted infringement claims with respect to the Avengers Alleged Infringements by way of the Initial Demand Letter.

94.     In light of its status as a highly sophisticated copyright owned and seasoned, prolific copyright litigator, BackGrid should have discovered and asserted claims with respect to the Avengers Alleged Infringements within three years in the exercise of reasonable diligence.

95.     BackGrid cannot establish that it could not have discovered and asserted claims with respect to the Avengers Alleged Infringements within three years in the exercise of reasonable diligence.

96.     As a result of BackGrid's unreasonable and inexcusable delay in asserting its rights with respect to the Avengers Alleged Infringements for nearly four and a half years, including for a period of nearly three and a half years between the initial allegedly-infringing publication of the Avengers Photographs on the Men's Journal Website on July 19, 2019 and Arena's acquisition of Men's Journal on December 13, 2022, Arena has been substantially prejudiced by now being forced to defend against BackGrid's infringement claims which, had BackGrid acted with reasonable diligence, should have been asserted against the predecessor-owner of Men's Journal before Arena's acquisition of Men's Journal and commencement of operation of the Men's Journal Website.

97.     Accordingly, BackGrid's infringement claims against Arena with respect to the Avengers Alleged Infringements are barred by the Copyright Act's statute of limitations and the doctrine of laches as a matter of law.

      **E.     BackGrid's Copyright Claims Against Arena As To The Rihanna Photograph and the Booker/Jenner Photograph Are Barred By The DMCA**

98.     As set forth in the Initial Demand Letter, BackGrid has alleged that Arena infringed its copyright rights in the Rihanna Photograph by unauthorized use on the Fashionista Website, on the following web page:

https://fashionista.com/2017/10/rihanna-burberry-trench-coat (the "Rihanna Alleged Infringement").

99.    As set forth in the Initial Demand Letter, BackGrid has alleged that Arena infringed its copyright rights in the Booker/Jenner Photograph by unauthorized use on the Fadeaway World Website, on the following web page: https://fadeawayworld.net/entertainment/devin-booker-enjoying-his-vacation-with-kendall-jenner (the "Booker/Jenner Alleged Infringement").

100.   BackGrid's claims against Arena with respect to the Rihanna Alleged Infringement and the Booker/Jenner Alleged Infringement are barred by the safe harbor provisions of the DMCA.

101.   Arena does not publish the Fashionista Website or the Fadeaway World Website, or any content (including, without limitation, any photographic images) that appears or is displayed on the Fashionista Website or the Fadeaway World Website.  Rather, Arena is merely a service provider that provides the technology platform on which the Fashionista Website and the Fadeaway World Website are hosted and operated by third-party users.

102.   Third-party users of Arena's platform are the publishers of the Fashionista Website and the Fadeaway World Website, and, upon information and belief, are responsible for all of the content (including, without limitation, all of the photographic images) that has appeared or been displayed on the Fashionista Website and the Fadeaway World Website at all relevant times.

103.   At all times relevant, Arena has exercised no control or moderation over any of the content (including, without limitation, any photographic images) that has appeared or been displayed on the Fashionista Website or the Fadeaway World Website, and has not received any financial benefit directly attributable to any content (including, without limitation, any photographic images) that has appeared or been displayed on the Fashionista Website or the Fadeaway World Website.

104.   The Rihanna Alleged Infringement appeared on the Fashionista Website as a result of acts taken by and at the direction of a user of Arena's platform, namely, the third-party user which publishes the Fashionista Website. Arena did not participate in, approve, moderate, select, or direct the Rihanna Alleged Infringement, or any other use of the Rihanna Photograph.

105.   Accordingly, if the Rihanna Alleged Infringement is deemed to infringe BackGrid's copyright rights in and to the Rihanna Photograph, such infringement is by reason of storage of the Rihanna Photograph on the Fashionista Website at the direction of a user of Arena's platform, and therefore is subject to the DMCA's safe harbor provisions.

106.   The Booker/Jenner Alleged Infringement appeared on the Fadeaway World Website as a result of acts taken by and at the direction of a user of Arena's platform, namely, the third-party user which publishes the Fadeaway World Website.  Arena did not participate in, approve, moderate, select, or direct the

FIRST AMENDED COMPLAINT

Booker/Jenner Alleged Infringement, or any other use of the Booker/Jenner Photograph.

107.   Accordingly, if the Booker/Jenner Alleged Infringement is deemed to infringe BackGrid's copyright rights in and to the Booker/Jenner Photograph, such infringement is by reason of storage of the Booker/Jenner Photograph on the Fadeaway World Website at the direction of a user of Arena's platform, and therefore is subject to the DMCA's safe harbor provisions.

108.   BackGrid has never served Arena with a Notice of Claimed Infringement in accordance with 17 U.S.C § 512(c)(3) with respect to either the Rihanna Alleged Infringement or the Booker/Jenner Alleged Infringement.

109.   Arena has not received any financial benefit directly attributable to either the Rihanna Alleged Infringement or the Booker/Jenner Alleged Infringement.

110.   Therefore, Arena is insulated from copyright infringement liability to BackGrid for the Rihanna Alleged Infringement and the Booker/Jenner Alleged Infringement as a matter of law pursuant to the DMCA's safe harbor provisions.=

## IV.   McLachlan's "License Compliance Audit" of Arena

111.   On May 31, 2024, McLachlan's U.S.-based legal counsel sent a letter to Arena's legal counsel identified as a "License Compliance Audit" (the "Audit Letter").  A copy of the Audit Letter is attached hereto at **Exhibit F**.

FIRST AMENDED COMPLAINT

112.   In the Audit Letter, McLachlan's counsel stated that "Our client has requested us to perform a license compliance audit for the copyrighted materials published on your client's website www.surfer.com".

113.   In the Audit Letter, McLachlan's counsel provided reproductions of five photographs and a screenshot of one video depicting the actor Nicolas Cage, which the Audit Letter represented to be "Copyrighted Material Owned by Banjo McLachlan", and for each of which the Audit Letter provides U.S. copyright registration information.[3]  These five photographs and one video are collectively referred to herein as the "McLachlan Works At Issue".

114.   In the Audit Letter, McLachlan's counsel also provided screenshots of the Surfer Website, which the Audit Letter described as "proof of the unlicensed use as it appears on your client's website".

115.   In the Audit Letter, McLachlan's counsel also stated that McLachlan "is devoted to protecting the rights embodied within his work, as well as the protectable rights associated with our client's affiliates".

116.   Therefore, in the Audit Letter, McLachlan's counsel demanded that Arena "provide us with the necessary information concerning [its] license" for the McLachlan Works At Issue.

---

[3] U.S. Copyright Office records indicate that McLachlan is the sole copyright claimant for each of the two U.S. copyright registrations identified in the Audit Letter as associated with the McLachlan Works At Issue.

FIRST AMENDED COMPLAINT

117.   By engaging legal counsel to conduct a "license compliance audit" of allegedly "unlicensed" uses of "copyrighted material owned by Banjo McLachlan" (namely, the McLachlan Works At Issue) on the Surfer Website as depicted in the Audit Letter for the purpose of "protecting the rights embodied within his work, as well as the protectable rights associated with our client's affiliates". McLachlan has taken the position that the uses of the McLachlan Works At Issue on the Surfer Website depicted in the Audit Letter implicate protectable rights in and to such works and legally require a license in order to comply with the protectable rights of those works.

118.   Furthermore, by McLachlan (through counsel) demanding "necessary information concerning [Arena's] license" for the uses of the McLachlan Works At Issue on the Surfer Website described and depicted in the Audit Letter for the purpose of a "license compliance audit" conducted to "protect[] the rights embodied within his [McLachlan Works At Issue], as well as the protectable rights associated with [his] affiliates", McLachlan has created a credible threat of immediate litigation against Arena should such "information concerning [Arena's] license" not be provided to establish "license compliance".

119.   As of the date of filing of this Complaint, McLachlan has not withdrawn any of his allegations set forth in the Audit Letter.

FIRST AMENDED COMPLAINT

1

2

## V.   McLachlan's Claims Against Arena of "Unlicensed Use" of the McLachlan Works At Issue Implicating "Protectable Rights" Are Legally Without Merit

3

4

120.   As set forth in greater detail below, McLachlan's allegations against

5 Arena of unlicensed use implicating protectable rights with respect to the

6 McLachlan Works At Issue are meritless and fail as a matter of law pursuant to

7 binding precedent of this Court.  Accordingly, by this declaratory judgment action,

8 Arena seeks a declaration of non-infringement of any of McLachlan's or

9 BackGrid's[4] copyright rights in and to any of the McLachlan Works At Issue.[5]

10 121.   As set forth in the Audit Letter, McLachlan has alleged that Arena

11 engaged in unlicensed use of the McLachlan Works At Issue for which a license is

12 required, and did so for the purpose of "protecting the rights embodied within his

13 work, as well as the protectable rights associated with our client's affiliates", with

14 respect to uses of the McLachlan Works At Issue on the web page

15 https://www.surfer.com/trending-news/leaked-footage-nicolas-cage-fights-surf-

16 gang-while-filming-new-movie (the "McLachlan Alleged Unlicensed Uses").

17 122.   Screen captures of the McLachlan Alleged Unlicensed Uses are

18 attached hereto at **Exhibit G**.

19

---

20 [4] As noted at Paragraph 27 *supra*, upon information and belief, McLachlan has licensed one or more of the McLachlan Works At Issue to BackGrid.  To the extent any such licenses were exclusive licenses providing BackGrid standing to assert copyright infringement claims, Arena seeks a declaratory judgment of non-infringement of the McLachlan Works At Issue with respect to any exclusive rights thereto owned by BackGrid, as well as a declaration of non-infringement of McLachlan's claimed copyright rights in and to such works.

21 [5] Arena's defenses to McLachlan's allegations set forth in this First Amended Complaint are asserted without waiver of or prejudice to Arena's right to assert additional and/or alternative defenses should grounds for any such further defenses be discovered during the course of this litigation.

22

FIRST AMENDED COMPLAINT

23

123.  As reflected in the screen captures attached hereto at Exhibit G as well as the screenshots shown in the Audit Letter, the McLachlan Works At Issue only appear on the Surfer Website by way of embeds of third-party social media and YouTube posts of those works.

124.  Upon information and belief, some or all of the embed uses of the McLachlan Works At Issue on the Surfer Website constituting the McLachlan Alleged Unlicensed Uses are embeds of social media and/or YouTube posts by BackGrid or authorized by BackGrid.  Thus, upon information and belief, some or all of the McLachlan Alleged Unlicensed Uses arise directly from McLachlan's licensing of some or all of the McLachlan Works At Issue to BackGrid.

125.  The McLachlan Works At Issue are not and have never been posted directly (i.e. other than as embed of third-party social media and YouTube posts) on the web page identified above, any other page on the Surfer Website, or any other website owned, operated or controlled by Arena, or stored on any server owned, operated, or controlled by Arena.

126.  The McLachlan Alleged Unlicensed Uses, embeds of third-party social media posts of the McLachlan Works At Issue on the Surfer Website (where the McLachlan Works At Issue are not stored on any server under Arena's ownership), are not displays or uses of the McLachlan Works At Issue implicating a copyright owner's protectable rights as a matter of law. *See Hunley, supra, citing Perfect 10 v. Amazon, supra*.

30                    FIRST AMENDED COMPLAINT

127.    Therefore, because the McLachlan Alleged Unlicensed Uses are embeds of third-party social media and YouTube posts, and Arena has not engaged in (and McLachlan has not alleged) any other use of the McLachlan Works At Issue, Arena has not engaged in any unlicensed use of the McLachlan Works At Issue implicating a copyright owner's protectable rights, and thus has not infringed any exclusive copyright rights in and to the McLachlan Works At Issue owned by McLachlan or which may be owned by BackGrid, as a matter of law.

**<u>FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF</u>**
**<u>Declaratory Judgment of Copyright Non-Infringement</u>**
**<u>(as against BackGrid)</u>**

128.    Arena repeats and reincorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

129.    An actual and justiciable case and controversy exists between Arena and BackGrid by way of the credible threats of immediate litigation by BackGrid against Arena arising from BackGrid's allegations against Arena of infringement of its copyright rights in and to the BackGrid Photographs At Issue.

130.    As set forth in greater detail in Paragraphs 34-110 *supra*, BackGrid's copyright infringement claims against Arena as to each and every one of the BackGrid Photographs At Issue are without merit, on the basis of one or more defenses applicable to each allegedly infringing use of each photograph.

131.  Accordingly, in order to resolve the case and controversy between the parties arising from BackGrid's copyright infringement allegations against Arena, Arena is entitled to a judicial declaration of non-infringement of any copyright rights owned by BackGrid in and to any of the BackGrid Photographs At Issue.

**SECOND CAUSE OF ACTION FOR DECLARATORY RELIEF**
**Declaratory Judgment of Copyright Non-Infringement**
**(as against McLachlan & BackGrid)**

132.  Arena repeats and reincorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

133.  An actual and justiciable case and controversy exists between the parties by way of the credible threats of immediate litigation by McLachlan against Arena arising from McLachlan's legal counsel's allegations of unlicensed use of the McLachlan Works At Issue by Arena made for the purpose of protecting the rights embodied in such works and demand for proof of licensing.

134.  As set forth in greater detail in Paragraphs 120-127 *supra*, McLachlan's allegations against Arena of unlicensed use of the McLachlan Works At Issue by Arena implicating protectable rights embodied in such works are without merit, on the basis of one or more defenses applicable to each alleged use of each work.

135.  Accordingly, in order to resolve the case and controversy between the parties arising from McLachlan's counsel's allegations against Arena, Arena is entitled to a judicial declaration of non-infringement of any copyright rights

FIRST AMENDED COMPLAINT

owned by McLachlan, and/or any exclusive copyright rights licensed by

McLachlan to BackGrid, in and to any of the McLachlan Works At Issue.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Arena respectfully requests that the Court enter judgment

in its favor and against Defendants on Arena's Causes of Action for Declaratory

Relief, and award relief to Arena as follows:

A.     A judicial declaration that Arena has not infringed any of

Defendants' copyright rights in and to any of the BackGrid Photographs At Issue

or the McLachlan Works At Issue;

B.     Arena's reasonable attorneys' fees and costs incurred in this action;

and.

C.     Such other and further relief that the Court determines to be just and

proper.

## **JURY DEMAND**

Arena respectfully demands a trial by jury of all claims and issues so

triable.

FIRST AMENDED COMPLAINT

Dated:     Los Angeles, CA
           June 7, 2024

                          Respectfully submitted,

                          Alexander Malbin (*pro hac vice*)
                          MEISTER SEELIG & FEIN PLLC
                          125 Park Avenue, 7th Floor
                          New York, NY 10017
                          Phone: (212) 665-3540
                          arm@msf-law.com

                          Ana C. Vásquez (231903)
                          MEISTER SEELIG & FEIN LLP
                          1250 Sixth Street, Suite 403
                          Santa Monica, CA 90401
                          Phone: (310) 295-2167
                          acv@msf-law.com

                          *Counsel for Plaintiff,*
                          *The Arena Group Holdings, Inc.*

FIRST AMENDED COMPLAINT